Next case is Goodman v. Shulkin. Good morning, Your Honors, and may it please the Court. The Veterans Court erred when it held that the regulation left it to medical experts to identify which diseases are exceptions to Section 3.317's presumptions. This is error, because it is up to the Secretary to decide that issue. The VA examiner provides medical information about an individual Veteran to enable VA adjudicators to make a case-by-case evaluation about that individual's entitlement. The examiner is not allowed to opine as to disease-by-disease conclusions. The regulatory history, as well as the training letter cited in the Joint Appendix, support this position. Section 3.317 requires that medical examiners consider the particular facts of a Veteran's case when determining whether a disease process is a medically explained, unexplained, multi-symptom illness. The specific error in the Veterans Court's decision can be found at pages 2 and 3 of the decision when it, quote, left it to medical experts to identify which diseases are, such as diabetes and multiple sclerosis, and that they have at least a partially explained ideology and pathophysiology. This is error, because a medical examiner's role is to examine an individual Veteran to enable VA adjudicators to make the case-by-case evaluation. The examiner is not allowed, again, Your Honors, to speculate this decision. So I understand your thought process. What is it that the medical examiner or the fact finder here should have done? We have someone here who's claiming knee pain, and the knee pain is due to rheumatoid arthritis. Yes, Your Honor. And so now the ultimate fact finder has to figure out, okay, is this the type of unexplained medical ailment that has no known ideology? So what was it that needed to happen in order for the fact finder here to have legitimately concluded that in this particular instance, this Veteran's ailment does not fall within this regulation? What needed to happen, Your Honor, is the independent medical examiner needed to truly render an examination of Mr. Goodman. What she did, and what the Veterans Court endorsed, is she said, look, rheumatoid arthritis, which this Veteran suffers from, has a partially explained ideology and pathophysiology. So it's not going to be a medically unexplained chronic multi-symptom illness. That is a conclusion. Yeah, I know what the medical examiner did, and I know what the board did. I'm trying to create this other alternate parallel world on how it would be the right for the medical examiner and the fact finder here to have reached this very same conclusion in that alternate. What is the methodology to get there if it's not to do it this particular way that happened? Sure, Your Honor, and I apologize for misunderstanding the question. The proper way for the examiner to get there would be to consider Mr. Goodman's exposures, to consider Mr. Goodman's testimony. We lay, that was all laid out at the Veterans Court below. It's cited in the joint appendix. It's a dot by dot explanation of all the things that happened with Mr. Goodman while he was serving in the Gulf. At one point before the VA, and I can't remember, did Mr. Goodman argue that environmental factors shouldn't be considered? I, the environmental, the argument that was made below, as far as I read it, and as far as I recall pleading it below, was that. I'm just trying, am I remembering something incorrectly? I don't know that you're remembering anything incorrectly. It's just that I know that the environmental factors such as his exposures to burn pits were specifically asked to be considered once it got to the Board of Veterans' Appeals. I don't recall any time before the VA him saying that environmental factors should not be considered. The argument is that the specific environmental factors that he was exposed to should be considered, and that was what was argued at the Board, and the Board undertook some of that analysis, but the problem with the Board's decision is that while it undertook that analysis, it was relying on this medical expert's opinion that has this conclusion in it that graphs on rheumatoid arthritis into 3.317 all of a sudden. So had the examiner really, truly articulated and examined Mr. Goodman to your Honor's question and laid out all of these factors, the 3.317, the 38 U.S.C. 1117, that the medical literature, that the training letter that's cited in the joint appendix from 2010, all of those things that are laid out that the examiners are supposed to do, and some of the things that are laid out in the M21, had the examiner done that for Mr. Goodman, the examiner, I don't know that I'd be here today, and I don't know that Mr. Goodman may have won or may have lost, but regardless, what the Veterans Court found that she was able to go ahead and graphed on rheumatoid arthritis into that sentence of 3.317A22 is the legal error in this case. There is also no factual dispute, as I discussed and as was conceded at the Veterans Court, and I believe was, I don't want to put words in my opposing counsel's mouth, but it appeared, if not conceded, at least alluded to, that there is no question what the examiner did here. There is no question that the examiner articulated that it was her opinion that rheumatoid arthritis, in general, has a partially explained ideology and pathophysiology. That was... All the other evidence that you're talking about, now that was considered by the board, wasn't it? So it's your position that it's not enough that the board received the medical examiner's opinion and all these other cases of information, and instead, the proper methodology requires at all times that the medical examiner have all of that information, him or herself or herself. The board is not, and this is, as Your Honor knows, the board is not a medical fact finder, and so for the board, and the board does in its decision... You said earlier, it's the Secretary's decision, so since it's the Secretary's decision, shouldn't it be the Secretary who decides on a case-by-case basis? But to make, and this is what's in the regulatory history that's cited, and also in the training letter, in order to be able to render a case-by-case evaluation, the evidence, the expert evidence, which is all this really is at the end of the day, is expert evidence, the expert evidence has to speak specifically to the individual. If not, what the board did, and what the court then upheld, was allowing one VA examiner to speak broadly that rheumatoid arthritis just has a partially explained ideology and pathophysiology. No matter how much analysis they gave, or whether they checked boxes of things that are found in the regulation, or the M21, or the training letter, the fact remains that it ultimately relied on, and the Veterans Court's decision specifically holds at pages two and three, it ultimately relied on the conclusion, unsupported by anything other than a medical examiner's opinion, that rheumatoid arthritis is... We can't touch that, though. We can't look at what the board relied on, and whether it came up with the right finding. The only thing you're asking us to consider is whether the medical examiner had to do more, right? Or do something different, a different kind of methodology. Yes. Okay. A different, a methodology that's called for by the law, which is an individual case-by-case evaluation. Yes, Your Honor, and that's what makes this case cleaner for your review. If there are no further questions, I'll reserve the balance of my time. Thank you, Your Honor. May I please, Your Honor, inquire into what is the right process, what is the correct process, in determining whether an individual deserves presumption for Gulf War Veterans under 38 CFR 3.317? The right process, Your Honor, is exactly what occurred here, and it is consistent with the regulatory scheme that is overall for benefits, as well as the one that's established under the statute and regulation here. Can a medical examiner just go to a medical encyclopedia, and after reading a passage about rheumatoid arthritis, come back and say, well, rheumatoid arthritis, there's a partially understood ideology. Game over. Can a medical examiner do that? And then the board says, well, it's a broad, generic matter. We now know this medical examiner's opinion that rheumatoid arthritis has a partially known ideology, and so, therefore, this claim under this particular regulation fails. Well, Your Honor, I would hope in that situation that the board would require a little bit more information out of the medical examiner before relying upon that opinion. If you look at the medical opinion in this case, pages 90, 91, and 92 of the record, you have on page 92 nine different medical texts that were relied upon by the director of rheumatology at a VA clinic. And the board specifically relied upon the doctor's expertise, the literature that this doctor relied upon, as well as what appeared to be the doctor's thorough review of the record. The board found the medical opinion in that case, in this case, to be persuasive and relied upon it. Now, the scenario that you pose, Your Honor, I could foresee a board saying this isn't very persuasive. Go back, please, and do another medical examination. What is consistent and what happens in medical examinations for VA benefits is you have the role of the medical officer, who under 410, I believe it is, furnishes, and that's 38 CFR 410, excuse me, I shortcutted that, furnishes ideological and pathological data for the board to consider. And the board under 4.2 considers the medical evidence that it has before it, as well as the evidence of service and every other evidence in the record, and sort of takes all this evidence and determines whether a rating is appropriate for this person based upon their disability. That's exactly what happened here. We have the medical examiner take a look at rheumatoid arthritis based upon section 3.317, find it akin to diabetes and multiple sclerosis, and therefore not a medically unexplained. I'm going to shortcut this by saying unexplained illness, Your Honors, instead of saying amuse-me or medically unexplained chronic multicellular illness. And then that information was passed to the board. You can see that the board, in pages 111, 112, 116 of the record, relied heavily, finding this to be very persuasive, and concluded on a case-by-case basis that- Right, but everything you're saying I don't think is directly addressing the appellant's argument. The appellant's argument, as I understand it, is just because the medical examiner, based on all of his or her knowledge and research in the area of rheumatoid arthritis, has arrived at this opinion as to the etiology, or the extent we understand the etiology of rheumatoid arthritis generally. This appellant is saying, well, maybe I've got a specific kind of rheumatoid arthritis, and so therefore what needed to happen here was a medical examiner really examining me, not examining the literature, and then only after examining me, arriving at conclusions and findings based on that examination of me. So what is your response to that, that therefore there was an error in process in how to assess whether or not this particular veteran falls within this particular regulation? Yes, Your Honor. I do want to note, just prior to answering that question, that we do believe that the appellant's argument has changed. The argument originally was that precedent has been set, binding precedent, and we disagree with that position as well. But definitely the argument that we've heard today is as Your Honor states it. What we are hearing from appellants today is that there is an underlying disagreement with the text of 38 CFR 3.317. It is a disagreement with the plain language of it, without interpreting the plain language of it. The briefing that's before the Court hasn't addressed the plain language of 3.317. What it has addressed is whether or not there was a surfing of authority by the medical examiner. But we don't believe that there is an issue even on this front, Your Honor, because the plain language of 3.317 demonstrates that for a presumption, this presumption, much like many other presumptions in VA context, such as the ALS presumption or the presumption regarding Agent Orange, you look at the particular disease, not the impact of the disease on the individual, whether the individual has the disease, because what are presumptions? Presumptions are methods of lowering the evidentiary burden for the claimant. Instead of having to demonstrate the three different steps of service connection, the existence, the disability, aggravation or occurrence during service, and then a nexus, you just need to prove that you have the disease. So the way that 38 U.S.C. 111.17, the statute upon which this is all based, and 38 CFR 3.317 reads is looking exactly at specific illnesses. For example, the examples provided of what are unexplained illnesses are chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders, and that is A, 2, B, 1, 2, and 3, your honors. And then a further explanation, chronic multi-symptom illnesses of harshly understood etiology and pathophysiology such as diabetes and multiple sclerosis will not be considered medically unexplained. 3.317 is not instructing the VA adjudicator to determine whether or not Mr. Goodman's specific etiology or pathophysiology is explained or not. It's talking about the disease in general. And this is consistent with Agent Orange's presumption, with the ALS presumption. Mr. Goodman relies upon a phrase in the regulatory history to create his argument. Now, we noted in our briefing that this phrase is taken out of context, that actually when read in context, the regulatory history says this change, this change being the 2010 October amendment that actually added in the diseases, multiple sclerosis and diabetes. This change will have the effect of delegating to the VA adjudicators the authority to determine on a case-by-case basis whether additional diseases may meet the criteria, paragraph A22, in the same manner as they make the determinations necessary for designing claims. As I've already noted, it was done in the same manner. And, Your Honor, if you don't mind, I would propose a hypothetical situation where it could come out differently. In this case, Mr. Goodman's personal physician declined to put in a medical statement. If that had not occurred, if the doctor had actually put in a medical statement relying upon medical text that reached the exact opposite conclusion as the VA medical examiner, the adjudicator would have had two different medical examinations reports to look at. The adjudicator could have found one more persuasive than the other. The adjudicator could have found them equal. And then the benefit-of-the-doubt rule could kick in. But at that point, the adjudicator is making a case-by-case-based determination as to whether or not rheumatoid arthritis applies in this situation to be a presumption. And what's important here is just going quickly. Let me see if I understand you correctly. You're saying that the way this rule operates, it's a presumption rule, assuming that someone has an unexplained diagnosis that has no known etiology. And the way you apply that regulation is not necessarily looking at all the interesting little details of a particular veteran's health profile. It's more about understanding whether this ailment is akin to other ailments that have an unknown etiology. That's correct. And then at the same time, we've got explanation in the regulation history that this should be done on a case-by-case basis. Correct, Your Honor. So I guess I'm a little confused because it sounds like science is supposed to be known etiology or known etiology, and yet we've created a system here where we're going to have this battle of the scientists on a case-by-case basis for individual veteran claims? Yes, Your Honor. Well, it's case-by-case and disease-by-disease, isn't it? Disease-by-disease, yes, Your Honor. What I'm saying is we could have 100 straight veteran's claims for rheumatoid arthritis under this regulation, and then the way you understand the way the rule is to be applied, it just comes down to a battle of the doctors in each of those individual 100 cases on the strength of their reasoning and documentary evidence on why rheumatoid arthritis does or does not have a known etiology. And you almost completely divorce the actual veteran from each of those 100 claims. But you're presuming that the veteran has the disease in question. Is that correct? In the presumption that the veteran has, excuse me, now this portion of 3.317 addresses diagnosed illnesses. There is an undiagnosed section that is not relevant towards this appeal, but that's when the individual has a mesh of different symptoms that no one can diagnose. What the medically unexplained chronic multi-symptom illnesses are are diagnosable things, like chronic fatigue syndrome. We know that doctors can diagnose somebody with that, but the doctors are confused as to why it occurs and how it will develop in the individual. These are the ones that are addressed here. And why is there a presumption here? It's because these are diseases that the medical community is trying to understand. Now, our medical examiner on page 92 looked at not indifferent piece of medical literature. This week, a different piece of medical literature could come out that discredits all nine of those, that shows that perhaps rheumatoid arthritis has no known etiology, has no known pathophysiology. A veteran who comes in and claims at that point has this new study that says that there is, you know, the previous ones are no longer valid. This allows for flexibility in addressing the presumption with these Gulf War veterans,  That's why we have doctors repeatedly making these determinations, Your Honor, because literature could very much change in these different areas. So unlike a presumption like the Agent Orange presumption, which lists, I think, 14 different diseases straight out, those are the 14 different diseases you need to have. The ALS one is very specific. You need to have ALS. This one allows for flexibility for all these veterans who, years later, are developing these meshes of symptoms, these diseases that we're naming but we don't fully understand. So, Your Honor, it allows for flexibility in that area. And to be very clear, Mr. Goodman also brought forth a direct service connection claim, which he does not appeal today, which did look at the different environmental factors that he was exposed to. I think, Your Honor, that page 114 of the record was what Your Honor was looking for when asking whether or not Mr. Goodman below had a different argument about environmental factors. The board states, the attorney argues that the medical advisor was wrong to have discussed environmental factors because 38 CFR 3.317 does not require proof of exposure to toxins. If the court has no further questions, we respectfully request the court dismiss or affirm. Excuse me. Dismiss the appeal or affirm the decision. Thank you. Mr. Stoltz, this is not a reprimand of any sort, just a practice pointer. When you're sitting at a council table and you disagree with somebody, keep a straight face. I apologize, Your Honor. I do apologize. I was concentrating intently, perhaps too much so on what my colleague was arguing. One reason that I was concentrating so intently is because this argument has come into such sharp focus during this oral argument. I'm understanding the Secretary's point. He is saying that under 3.317, there can be a disease-by-disease evaluation. I do understand the Secretary's point a little bit about there being some flexibility, and I think that the regulation, in fact, all VA regulations to some extent, allow for some flexibility. But the way that we are reading the regulatory history says that accordingly, currently, VA adjudicators or other officials cannot make that determination. A little slower. Accordingly, currently, VA adjudicators or other officials cannot make that determination in individual cases without a specific determination by the Secretary. It's my understanding that if rheumatoid arthritis, and my understanding, I arrive at my understanding from reading the regulatory history, from reading training letters, that if rheumatoid arthritis is to be added to 3.317 with the partially explained pathophysiology and ideology, that can be done through notice and comment and by the Secretary. I'm having, frankly, Your Honors, a hard time, and I practice veterans' law, I'm having a hard time understanding how this, and perhaps I'm misunderstanding something, but this is a seismic shift, what the VA is arguing here, that as Judge Chen pointed out, that now under 3.317, it's going to become a battle of experts, and we have that in this case. There's expert evidence in here that rheumatoid arthritis has no known ideology, and then there's evidence from this person, who VA rightly points out is a very well-qualified person, who says that rheumatoid arthritis has a partially explained ideology. So we do have a battle of experts, but what we don't have is an examiner examining Mr. Goodman's individual case. And in every other... What about counsels for the government's argument that separately it was examined on environmental factors? The fact remains, Your Honor, that the Veterans Court held that an examiner for VA can broadly announce that pathophysiology and ideology are partially understood. So there was an analysis, he's right, it's not part of this appeal, because there is a legal error at pages two through three of the Court's decision. And I appreciate very much... Didn't the Board consider a lot of different things beyond just the medical examiner's report? The fact that there was no known issues of rheumatoid arthritis during this person's service, and his exit examination, he looked healthy, and so nothing had come up until 25 years later when he had some kind of bilateral knee pain. It did. It did undertake an analysis, and the medical examiner undertook an analysis. But in none of that analysis, that was on a direct basis, which is not subject to this appeal, in none of that analysis did this argument, the one that is spelled out at pages two and three of the Court's decision, that this argument of the partially understood ideology and pathophysiology, it's a separate... I'm sorry, Judge Shen, I'm taking a long time to get to the point. The point is that there were different theories of entitlement. That's the punchline. The punchline is, yes, the Board undertook this analysis for different theories of entitlement. Under this theory of entitlement, which is very narrowly pled in this Court, I hope, the narrow pleading is whether or not this has to be done on a case-by-case evaluation, which is our position, which we support with the regulatory history, with the training letter, with the way, frankly, this is done in VA cases. But the other side is saying that this is still being done on a case-by-case basis. My understanding is that was really the primary thrust of your appeal, of your briefing, is that what is happening here is not something that's being done on a case-by-case basis and that somehow this medical examiner's report is going to be treated as having some precedential binding effect on the VA going forward for everybody else's claims under this regulation. And the other side is saying, well, there's no proof of that. There's nothing about the VA that's proclaimed that this decision is a precedential opinion. So there's nothing that's precluding the continuing case-by-case decision-making process for future veteran claims. So that's my understanding of what the crux is here. What is your response to that argument? My response to that, Your Honor, is that this ‑‑ I do understand that this is not going to ‑‑ it's not like VA is going to be able to point to this as precedent, per se. Nevertheless, the Veterans Court, in a decision, has said that this is how the law reads. And all these technical arguments are correct. Well, what do you mean by this? That an examiner is able to opine broadly on whether rheumatoid arthritis, in this case, has a partially explained ideology and pathophysiology. So the Veterans Court ‑‑ You're not saying that there's a subsequent decision which relies on this earlier decision to make that finding, are you? There ‑‑ You're just talking about the procedure in this case. I'm talking about the procedure in this case, Judge Stoll. Yes. I suppose really the problem with this is that if the VA is allowed to ‑‑ if the VA wins this case and the Veterans Court's decision is upheld, then a veteran that goes to this doctor is going to lose every time. A veteran that goes to a different doctor, as Judge Chen pointed out, that relies on different medical treatises without examining is going to win. And that can't ‑‑ and it is our position that that can't be, that it has to be done on a case‑by‑case basis. And so we ask the Court to vacate the Veterans Court's decision, remit for the proper legal ‑‑ excuse me, the proper legal analysis to take place. Thank you, Your Honors. Thank you, Counsel. The matter stands submitted.